Good morning, Your Honors. Good morning. Daryl Parker appearing on behalf of Galina Medvedeva. There are two separate areas of argument that we have today. The first is the summary judgment portion of the case, and the second is the jury instructions that were given. In these type of cases, these police misconduct cases, inevitably the facts are going to vary, sometimes wildly, depending on who's telling them. And at the summary judgment stage, the court has to take the facts in a light most favorable to Ms. Medvedeva. And Medvedeva's testimony differs dramatically from the police testimony, leaving us with one issue, and that is whether or not she could be arrested simply for not opening the door when the police asked her to open the door. In the course of an ongoing emergency. In the course of an ongoing emergency, right. And I just, I don't mean to interrupt, but did it, isn't there a 40-minute gap since we're getting the uncontested facts out of the way? Isn't there a 40-minute period before they force their way in? It's a significant amount of time. I think it's somewhere between a half an hour and an hour. Okay, that's good enough for, thank you. There, and we're not contesting the officer's decision to come into the house. We're arguing that there has to be probable cause to arrest her, and the arrest is based only on the fact that she says, or she does not allow them into the house. That's the obstruction. The rest of the portions of obstruction and the rest of the portions of the grounds for the arrest are disputed. Let me just make sure I understood what you said. You're not disputing that they had a right to come into the house? Correct. All right. Right, I'm disputing them arresting her for not opening the door and letting them into the house. Because well, how do they get, if they have a right to come in and they won't let him in and then she won't let him in the bathroom, maybe I'm having some under, difficulty making the distinction and you could clear that up. If they have a right to come in the house, what you said. They have a right to come into the house if they believe there's an emergency. All right. Right, they have the right. And so right there at this point, she's in, they're out, they have a right to come in. So we're agreed on that, correct? Right. Okay, now what happens? The question, well the question is, can you arrest somebody because they do not voluntarily open the door? And you can't. It's a violation of the Fourth Amendment to do that. Because if you have a right to deny consent, you can't be arrested for denying consent. And that was made perfectly clear in United States versus Prescott. That cannot be the subject of an arrest. And the case that they're relying on, the Steen case, what's really interesting about that case is that the majority was cognizant of the fact that there was going to be a dissent. And the dissent is based primarily on the same argument that I'm making. And in footnote 2 in the Steen case, the judge says, we're distinguishing this because the person did not have a right to be in that property. He did not own the property. He didn't have a possessory right in the property. He had no right to be there. So he did not have a Fourth Amendment right to say no. In this case, she had a Fourth Amendment right to say no. Even in the case of an emergency? Even in the case of an emergency, she has the right to say no. And if the law was, as you're suggesting it were to be, we would have to go through an analysis each time whether or not the plaintiff or the person who's the victim would analyze what are the police really doing? Are these really the police? Is this really an emergency? We'd have to go through that exercise. The better rule is that you can't base an arrest on someone insisting on their Fourth Amendment rights not to open the door. But counsel, this just strikes me as a case that doesn't come close to the line. She had 30, at least 30 minutes, right? Right. And there was an ongoing emergency. You're not contesting that. So the rule that you're trying to, I think, convince us is, or to adopt, is a rule that would be that the police literally wouldn't be able to enter if the place was burning down and they needed to render assistance. No, but I did not argue that. They need to get the fire crew in there because water was coming through the wall with the electrical panel. And that's the part I think you're not contesting. But that's not my argument, Your Honor. Obviously, there's an emergency. I don't think I understand your argument because it really sounds to me like you think she has the right to refuse entry even when there's an ongoing emergency. And she has a really protracted period of time. You know, it's not like they just burst in the door instantaneously. So I don't think I do understand your argument. The argument is can she be arrested for obstruction? Okay. That's the argument. All right. And she, and I think then let's take the next step. There was the sort of scene at the door and then as Judge McKeown mentioned, but I don't think you went to it, as soon as they came in, she ran to the bathroom and blocked that door as well, right? Only if you take the facts in a light most favorable to the defendant. If you take the facts in a light most favorable to her, she was already in the bathroom when they came in. Okay. And so she didn't stop them from coming in the front door, right? Right. Which is what I thought you were contesting. But she stopped them from coming in the bathroom door. No. Only if you take the facts in a light most favorable to the defendant and you draw all reasonable inferences in a light most favorable to the defendant. She says that she was in the bathroom, she heard people in the house, she was not fully dressed, she began to close the door because of that, and they pushed the door open. The door being the bathroom door now? Bathroom door, right. Okay, but the next part of the confrontation, if I can use that word, is it is sort of a scuffle, right, inside the bathroom. Again, if you take it in the light most favorable to the defendant, that's what she, does she contest that she resisted at all at that point, in the bathroom? She says that she, she, she was in the bathroom, she realized there was someone in the unit. She began to close the door to protect her privacy, and at that point they busted in the door and physically manhandled her, threw her in the bathtub, wrenched her arm, pulled her out of the tub, and arrested her. That's her testimony. The officers have a different version, and this is very common in these cases. You have two different versions of what happened, and my argument is, can you base an arrest simply on someone not opening the door? And I say you can't do it. Chris told me it's not a question of her not just opening the door. That's what's difficult for me. I don't think there is any, any contest that at a minimum she shut the bathroom door. Yeah, the, the, the inference, though, is in one situation you're saying she shut the bathroom door as an act to physically resist the police coming into the bathroom. Under the inference drawn from her facts, she, she began to close the bathroom door to protect her privacy. I understand. Okay. The excessive force claim actually went to the jury, correct? It did. And they returned a defense verdict. They returned the defense verdict, and obviously the jury instructions become an issue on that situation. If we were arguing a summary judgment motion or we were arguing to a court, we could argue the fact that she had a disability and she suffered from PTSD and she was in the throes of a flashback, which affected her abilities. We could argue that, but we could also cite the, the two cases, the two, the two primary cases on this issue, which are the, I think it's the Doer case and the Rutherford case. But the judge did not allow us to tell the jury that they could take into consideration the fact that she had an emotional condition. And it's, it's interesting because a lot of times courts will just look at the six instructions that are in the old Ninth Circuit instructions. And when the Ninth Circuit amended their instructions, they amended that particular instruction, they included an entire list. And on that list is the very instruction that we asked the judge to give, which was that the jury take into consideration the fact that she suffered from emotional distress or she had a disability. My understanding is when it got to be time to instruct or to, to, to draft the instructions, the judge, Judge Lasnik asked, what is it, what's your argument going to be? And I think the response was that you were arguing virtually every step in the sequence of events, right? Is there anything you excluded? No. Okay. So it was really, really broad. And my follow-up question is on the instructions that were given, how did they prevent you from arguing your case to the jury? Because we continued to argue that the, that the officers needed to take into consideration that she was not a criminal, that she was just suffering from PTSD and was in the throes of a flashback. And that was our argument throughout the trial. And without that particular instruction telling the jury that they could take that into consideration, it seemed like we were asking the jury to do something that there was no legal basis for. Well, there's, you have, you have the totality of the circumstances instruction. And as part of that, the question is about whether she poses an immediate threat. And it seems to me that within that ambit, you can argue what you did argue, size, her size versus strength, officer strength, what kind of warnings were used, what kind of situation she was in, what kind of response she might have given these circumstances. All that really goes to whether she posed an immediate threat. And nothing in the instruction precluded you from arguing — I thought you did make that argument, or that it was made at trial. Well, I did make the argument, Your Honor, and I did the best I could, but — Well, I think you did a good job of actually making the argument, a very good job of — within the ambit of the instruction. But without that additional instruction, which the Ninth Circuit has specifically put in when they amended the instructions earlier this year, without that instruction, we're arguing to a jury something that there's no written basis for. What jurors normally do is they look for cues from the judge, and if the judge instructs them that they may consider the fact that she has a disability in determining whether or not excessive force was used, it makes a big difference, because jurors are looking for that guidance. At what point did the evidence tell the jury at what point her mom showed up and explained to the officer that she was a vet with that condition? Was it in the evidence, Your Honor? Yep. Yeah. So the jury knew that. The jury should have known that, yes. And I'm getting down to four minutes, so I'd like to reserve time for rebuttal. You may. Thank you. Thank you. May it please the Court, Stu Estes for the defendant officers in the City of Kirkland. Whatever issues Judge Lasnik actually was given and passed upon below were well within his discretion. Nothing else was raised to him. These are new issues that were just discussed about the U.S. v. Prescott. They weren't passed upon below, and they shouldn't be considered here. As for the arrest for the obstruction issue, I'll confine the facts just to what are not disputed or admitted by plaintiff. She left the front door. The door was open with a universal key, a Knoxbox key. She ran to the bathroom. There's only one place in the entire apartment that the fire department needed to inspect, and that was the bathroom. Counsel, I think that question I posed to opposing counsel, forgive me for interrupting, was that she ran to the bathroom, and he corrected me and said that he thinks that her testimony was that she was already in the bathroom. Maybe the door was open, but she was already there. Does that matter? No. She ran from the front door to the bathroom. What sequence? Well, that's not what he just, he just corrected me on that point and said that he thinks her version of events, the uncontested fact, was that she was already in the bathroom. And my question is, I'll check the record, but my question is, does that matter? No, because there's not, he's only now saying on appeal that they can't arrest her for obstruction for not opening the front door. However, once they're in, lawfully, they have a right to inspect, and she's obstructing them by shutting the bathroom door. And his argument is she was shutting the bathroom door to protect her privacy. Maybe her position, but that doesn't matter. They needed to get into the bathroom, because that's where she was flooding. They waited 30, maybe longer, I think, actually, minutes before coming in. He's conceded between 30 to 60. I think what we have is 40, but be that as it may, quite an extended period of time before opening the front door. And my question is, when they entered and then proceeded directly to the bathroom, was there a, whether she was already there or not, was there a repeated demand to let them into the bathroom? Well, no, because what happened, which is not disputed, and I think he just told you, is that his officer would approach, she tried to close the door. So she slammed the door in his face, and her testimony was that she looked out to see who it was, because she didn't know who was in her apartment afterwards. So the answer to my question is no, they didn't repeat the command. No, he walked to the bathroom, and she slammed the door in his face. Okay. And he blocked the door from being shut, because he didn't want to go through the whole process again. The record, if you look at the CAD, the computer-aided dispatch report, the phone call to 911 was placed shortly after 3 o'clock, and they radioed in one in custody shortly after 4 o'clock. So from, and the water was running well before then. So the officers arrived maybe 20 minutes after 3, so yes, there's at least 40 plus minutes where they're doing this negotiation. And she was admitted at the front door. She opened the door and said, hey, I'm on the phone, and closed it. Okay, so counsel, if you win on this point about obstruction, can you move on to whether or not more should have been done to make the arrest less traumatic under the circumstances? I don't think she was allowed, for example, to put on any clothing. She was just wearing underclothes, for example. Do you want to speak to that? As to the ADA? Yeah. All right, the instruction that is being challenged was not challenged below. Judge Lasnik recessed, 30 minutes came out, said, how do you like Mr. Parker? He said, I like him better. And he went on to discuss number 15, the use of the term or in 15, which is not challenged on appeal. So he said he liked him better. There was nothing said about instruction number 19. This is an abuse of discretion standard because it's the formulation of a jury instruction with a number of elements. You have to recall that Judge Lasnik is working on a blank slate. Sheehan has just been decided by this court. This might have been the first post-Sheehan case decided to go to trial in Washington. So he's trying to craft a good instruction, and he gives us both. I think at 777, he comes out and says, I tried to give you each what you needed. He gave me the danger component, and he gave Mr. Parker some other things he wanted. And so- Was the plaintiff allowed to argue, did the plaintiff argue before the jury that this arrest process would have been less traumatic? Had she been allowed to, for example, put on clothing?  But the jury heard that argument? He said she was in a sports bra and panties, I believe. Well, but my question's different. Did he argue to the jury that she should have been allowed to put on clothing? Yes. And did he argue to the jury that they shouldn't have taken her down the stairs because of her ankle injury? He listed nine things. I can't recite them all, but it was not citing her and releasing her while she was screaming on the bed, taking her in her under clothing. And not taking her in an elevator. She said she couldn't walk because of a two-month-old surgery. And there were some other pieces too, but as Judge Glasnick characterized it, okay, so it's everything except the excessive force. And I think the present counsel's indicated that. In response to Judge Glasnick's question about what's your theory going to be, and then crafted the instruction. And so my question now is a little bit different. I just want to make sure that I'm understanding that the jury heard all of this evidence. Is that right? They heard it and rejected those claims. There was two independent witnesses testified about what she was or wasn't wearing and how she was being taken out and- Okay, you've answered my question, thank you. Thank you, Your Honor. If I could just go back briefly because I'm concerned about this United States versus Prescott case which has been cited to you. It was not cited below the dissent and Steen wasn't argued below. This is a brand new issue which has never passed upon. So I would assert a couple things. Steen and Prescott are very distinguishable. Steen was in the trailer, although in that case there was exigent circumstances and the Washington Court of Appeals in two to one decision said that it can be obstruction for not allowing entry into the trailer or not exiting when commanded, so that was a lawful command. That was decided the year of this incident. So my clients were operating under Washington case law. If you look at 1978 US versus Prescott, which has never been cited by this court again or any other that I've found for the proposition of you have a constitutional right to avoid entry. That had nothing to do with exigent circumstances. It was the question which hadn't been decided in the 70s about whether an arrest warrant was sufficient to allow entry into a residence to make the arrest. And so the court was not dealing with exigent circumstances. And what Mr. Parker is asking for is a right to create a public emergency, a disaster, by standing your ground and saying, yeah, I don't have to let you in. And so in the trial court, was the argument made that the officers never actually ordered her to open the door? Not in the complaint, not in the summary judgment opposition, but there's a sentence that Mr. Parker made in passing reference that I looked at the record before the argument. This is in the transcript of oral argument. I looked at the record before and I don't find a direct order. So he did make that. Judge Glasnick didn't pass upon it. It didn't come to anybody's radar because he didn't argue it other than making that passing reference. I would say that factually, there was an order. And if that had been raised at a proper time, I could have submitted a declaration from the officers addressing that. I also could have cited United States versus Young, where the deputy said, Mr. Young, I'd like you back in your truck, please. And this court said, that was a lawful order, the disobedience of which was obstruction. That's the case where he said, have a seat. Yes. Have a seat. Yeah. He kept saying, go sit in your truck. Please. Mr. Young, he didn't make a threat. He didn't say, I hereby command thee or anything. There's no magic words. That was an order. And Ms. Medvedeva also admits, in at least two places, that they were demanding to come in. They're pounding on the door demanding to come in. There's no question that they- Was the jury made aware of her PTSD and the source of it? Yes. Yes, she indicated by herself, her mother, and a psychologist that she had been sexually assaulted in the military and the circumstances of it. And there was even a diagnosis of military sexual assault. And so- And the jury knew that the mom had arrived so that the officers knew that before she was taken from the apartment, right? Yes. The plaintiff initially at the door sometime after 3.20 or 3.23 said, my mom's on her way. She'll be here in ten minutes. Well, it was another 30 plus minutes and she still wasn't there. Mom indicates that she arrived after her daughter was in handcuffs on the bed. But still in the apartment? Still in the apartment, on the mother's bed. She's sitting there screaming and that's where the ADA accommodation argument was made that should have just let her calm down. And ironically, her doctor says, well, as long as she's in handcuffs and the police are there, she's not going to calm down because you're triggering her flashback. So the only way that they can accommodate her is to, as she's screaming and kicking, to uncuff her and walk out and hope she calms down. Maybe put a blanket over her, let her get dressed. I mean, let me ask you this. I think Judge Lasnik was trying to thread the needle because he only has Title I instructions to work with and we have here a different title of the ADA and I agree with your recitation of how the explanation came out. And when he asked everybody, well, I've tried to kind of give everybody a little of something. But there was one aspect of the instruction I have a question about. And that is where he says that the reasonable accommodation has to be directed toward her ability to comply with the officer's orders. So in some respects, that seems like you're adding another layer to the so-called ADA defense that she needs to argue. What is your response to that? Whether that really is something required by the ADA? Because there are other aspects of accommodation to her that may be required, but may not be related to complying with the officer's orders. I think it's specific to this case because there's other ADA situations where someone might be hard of hearing and you need to get a sign language interpreter or diabetic and needs a candy bar or something like that. Here, the argument is and always was, you should have let her calm down. As far as the clothing issue, that was disputed by witnesses and the officers and I think that was rejected by the jury. What do you mean it was disputed? Was the argument not made? You're confusing me because you first said the argument was always let her calm down. And it seems from the record, it seems to me that that was part of the argument. Are you saying it was limited to that? No, we just hadn't heard it until five or ten minutes before a closing argument. Neither the court or defendants were ever enlightened about what the theories were until after the instructions were set. So, that's when- In closing, the jury was told, going back to the clothing, was the jury, did plaintiff argue to the jury that the police officer should have let her get dressed? Yes, all those nine things that he mentioned. Okay, all right, so then- And it was contrary to testimony during the trial as well. One of her friends said, I didn't see her in panties and whatnot. I didn't see her being dragged. The officers said they didn't. They picked her up. She's only a little bit more than five feet tall. They carried her down the stairs and she wasn't being dragged and the witnesses confirmed that, so- But she was not dressed, right? That's not contested, is it? Yeah, well, this is the trial, the ADA instructional question is as to trial testimony. And that was, so the jury heard conflicting stories on that and they obviously accepted ours. But just conflicting stories about whether she was seen being carried out without clothing? No conflicting evidence as I understand it about whether or not she was allowed to get dressed. She wasn't dressed, right? She was dressed and that's what the jury accepted. Otherwise, they would have returned a verdict in her favor. She was dressed, not just in underclothes? This is the trial issue as opposed to summary judgment. She said something different on summary judgment, but we went to trial. The jury heard conflicting stories about whether she was dressed or not. The officers said she had a top and yoga pants on. And no independent witness said that she was in her panties. Maybe the difference is, that's what their testimony is about how she was clothed by the time they took her out of the apartment, is that right? At trial, that was disputed. Yes, okay, now I think we are saying the same thing, okay. And then we've got summary judgment issues too, but this is not one of them, this is the trial. Okay, thank you. And so this is the formulation of the instruction, which is abuse of discretion, clearly, as is the Fourth Amendment. You don't get the laundry list of every gram factor. You might be given those instructions based on this court's new model rule that came out after this trial. But it's not an abuse of discretion to give them or not give them. Many circuits only give the three gram factors. We don't, Ninth Circuit is unusual in listing them all out. But going back to the court's question about the ADA, this is from plaintiff's closing argument. The last instruction, that's 19, that's challenged, and this is what he's telling the jury, would have enabled plaintiffs to comply with their commands. Why was she taken out? Because she wouldn't calm down. She wasn't under arrest initially. He told her, calm down, calm down repeatedly, but she wouldn't calm down. So that's the accommodation. The other little pieces, the nine little pieces, he was arguing were discrimination as opposed to accommodation, as I understood it. I have just a few more seconds, but the instructional issues are both abuse of discretion and the constitutional right to refuse entry is a brand new issue. If it's considered, I think also we should be allowed to argue qualified immunity because the cases are split. Prescott did not involve exigent circumstances. It relied upon a US Supreme Court case that involved administrative warrant. No case that I've seen other than our state court Steen involved exigent circumstances. So these officers were not on notice of any law that would have prevented them from making an arrest or obstruction. Thank you. Just briefly, with respect to his summary judgment motion, he did not even cite Steen or even the argument that he's making in his motion for summary judgment. He just said there are two issues, whether or not she obstructed the officers and whether or not she assaulted the officer. And so when we responded to the summary judgment motion, we were responding to what he argued. And then in reply, after we don't have a chance to submit anything, he brings up the Steen issue. But with respect to a constitutional right, I don't think there's an issue about whether or not it is or it isn't, because it's a matter of law. And we're arguing that as a matter of law, you cannot base an obstruction charge on someone's utilizing their constitutional rights. An officer telling a person to have a seat in a car or an officer telling a person to get out of a car is not the same thing as an officer telling a person, we want to get into your house, open the door. You just told me they have a right to get in there. Right, but they don't have a right to arrest her for not opening the door. That's my argument. I just want to make sure we're on the same page, thank you. Right. And with respect to the jury instructions, I argued that the jury instruction was incorrect. He even argued that the jury instruction was incorrect. I told the judge that this is not going to allow me to argue my theory of the case, because that's not what we've been presenting to the jury. We've been telling the jury they took her out this way, they mistreated her, they didn't give her a chance to calm down. They knew she suffered from PTSD. In fact, one of the officers said that she needed to be arrested to teach her a lesson. This is not a situation where you have a criminal. You have a person who, through no fault of her own, has a disability. She has PTSD, is triggered by banging. They were banging on the door, so she went into the bathroom to get away from the noise. They're arguing that that action is a crime. And that does not take into consideration that she suffers from a disability. Why have the ADA, even why have the ADA apply to these type situations if this is not a classic situation for it? Everybody with a disability doesn't have a hearing impairment or an obvious physical impairment. People with disabilities have mental disabilities. And this is a classic case of somebody having a disability, being arrested simply because they have a disability. Talking about it to one of the officers saying that she suffered from PTSD because she was assaulted in the military. They make a remark, she needs to be taught a lesson, and she's arrested. She's in panties and a sports bra. She was working out. They take her down the stairs, she does not get dressed. Whether or not they dispute our facts, if we don't have a jury instruction that allows us to argue that this violates the ADA, I'd do the best I could with the instruction the court gave me. They didn't take any consideration in the fact that she had a disability. In fact, they treated her harsher than you would treat somebody who didn't because they attributed her yelling and she was obstinate, even though her mom told her she has PTSD. What should they have done at that point, counsel? Opposing counsel argued that there was expert testimony that as long as she had handcuffs on and the police were there, she was not going to be able to calm down. What were they supposed to do? Where did that, I don't know where that came from. I don't know where in the record that- So your response is that's not in the record? That's not in the record. And two, what were they supposed to do? Well, they knew she had PTSD. They knew why she didn't open the door, right? They knew all this stuff at the time they decided to take her away. But when I read your briefing, and I don't mean to sidetrack, when I read your briefing, I just hear this drumbeat argument they should have given her a chance to calm down. But it seems that they waited at least 30 minutes for her mom to arrive. They waited an extended period of time. So what's your best shot at that? The banging on the door is triggering her PTSD. The more they bang, the more- I'm talking about after they had handcuffed her. How long were they supposed to wait? Well, after they handcuffed her, the mom came right in in a few minutes. It was a few minutes later. They hadn't physically taken her out of the property. She's there in the room on the bed. You think it was just a few minutes? Yeah, she's in the room on the bed. Her mom is saying she has PTSD. She's telling the officers what's wrong with her. At that point, they could have allowed her to calm down and left. The water was already cleaned up. It was already stopped. It's the arrest and the dragging her down the stairs, knowing that of her physical condition, and not allowing her to get dressed, and taking her to the car in that manner, that's a violation of the ADA. And we never got a real chance to prove that to the jury, because the instruction only allowed us to say- Okay, we have that point in mind. We've pretty well, I think, teased that out with both sides. So I appreciate your argument. I appreciate also argument from other counsel. And we'll now consider this case Medvedeva v. Kirkland as submitted. Medvedeva. Say it again. Medvedeva. Medvedeva. Thank you. I even wrote it out here, and I got it wrong. Medvedeva. Thank you very much. I appreciate it. The next case for argument will be Mansfield v. Pfaff.
judges: Hawkins, McKeown, Christen